972 A.2d 476

VAN NOTE–HARVEY ASSOCIATES, P.C., PETITIONER–APPEL-LANT, v. NEW JERSEY SCHOOLS DEVELOPMENT AU-THORITY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 19, 2009—Decided June 19, 2009.

---

[2] While the Department of Human Services is responsible for SVPA treatment, "[t]he Department of Corrections shall be responsible for the operation of any facility designated for the custody, care and treatment of sexually violent preda-tors...." *N.J.S.A.* 30:4–27.34(a), (b). This is not the occasion to develop wheth-er an involuntary SVPA commitment proceeding can be commenced while defendant is serving a sentence before he is "scheduled for release upon expiration of a maximum term of incarceration." *See N.J.S.A.* 30:4–27.28(c). *See also N.J.S.A.* 30:4–27.32(b).

Before Judges WEFING, PARKER and LeWINN.

*Donna D'Anna,* argued the cause for appellant (*Van Dalen Brower,* attorneys; *Ms. D'Anna* and *John M. Van Dalen,* of counsel and on the briefs).

*Maeve E. Cannon,* argued the cause for respondent (*Hill Wallack,* attorneys; *Ms. Cannon* and *Patrick D. Kennedy,* of counsel and on the brief; *Megan McGeehin Schwartz,* on the brief).

The opinion of the court was delivered by

WEFING, P.J.A.D.

Van Note–Harvey Associates, P.C. ("Van Note") appeals from a Final Decision of the Schools Development Authority ("Authority") dated December 20, 2007, advising Van Note that it had been excluded from the list of site consultants eligible to provide site feasibility investigation and environmental site closure services for the Authority for the 2007–2010 contract cycle. After reviewing the record in light of the contentions advanced on appeal, we modify that Final Decision.

The Authority was created in 2007 as successor to the Schools Construction Corporation ("SCC"). It oversees and funds school construction in special needs school districts throughout the State. It also provides grants for school construction in other districts that have not been designated special needs districts.

In June 2007, SCC issued a request for proposals ("RFP") to serve as site consultants for the school construction program for the 2007–2010 contract cycle. The RFP described the scope of the services to be provided by site consultants in the following manner:

The Site Consultant shall be responsible for providing professional engineering and environmental consulting services that span predevelopment (in support of land acquisition) through design, construction, and site closure. These services include the execution of real estate site feasibility and environmental due diligence on behalf of the Corporation; the quantification of environmental remediation liability exposure in a manner consistent with recognized standards of practice; environmental communications and risk evaluation support; execution of limited site remediation activities up to $25,000, and environmental remediation oversight.

At the time it issued the RFP, SCC had not determined the final number of site consultants to be selected but it estimated that up to nine firms might be chosen. The RFP provided the following description of the method it would employ to make its selection of site consultants.

Each proposal will be reviewed to determine responsiveness. Non-responsive Proposals will be rejected without evaluation. Responsive Technical Proposals will be evaluated by a Selection Committee ("Committee") established for this purpose. The evaluation will be based upon the information provided by the firms in response to this RFP, and any necessary verification thereof. The Technical Proposals will be evaluated in accordance with the following evaluation criteria:

| EVALUATION CRITERIA | MAXIMUM POINTS Firm |
|---|---|
| Project Experience in performing Site Feasibility Investigation and Environmental Site Closure Services | 30 |
| Staff Project Experience in performing Site Feasibility Investigation and Environmental Site Closure Projects | 30 |
| Firm Project Experience in Completing Environmental Communication, Limited Site Remediation & Triad Approach site characterizations. | 30 |
| Written Narrative of Firm's Approach to Providing Scope of Services | 30 |
| TOTAL: | 100 |

Firms will receive a final technical score and/or ranking based on the above-described evaluation process, except that, at its sole option, the NJSCC may conduct interviews. Following the interviews, if any, the final technical scores and/or rankings shall be determined, based on the evaluation criteria.

Four staff members of the Authority independently ranked the proposals submitted and separately scored each proposal.

The decision to proceed in this manner represented a break from prior practice. An internal Authority memorandum dated November 28, 2007, described the previous manner of selecting site consultants.

The Authority previously procured task order services in September 2003 to provide for site feasibility investigation and environmental site closure services. 24 firms were awarded contracts, each with a not to exceed amount of $8 million. The contract divided the State into four regions and awarded six contracts per region. These task order contracts expired in September 2006. No new work has been assigned to the task order firms since the expiration of the original contracts. The recommendation of award no longer divides the State into regions and as compared to the previous award, has reduced the not to exceed amount to $5 million per firm.

Van Note had served as a task consultant on various projects under this earlier procedure. There is no indication in this record that its work on these projects was anything other than entirely satisfactory. Indeed, the record before us includes a copy of a 2006 internal evaluation of the twenty-three firms providing such consultant services to the SCC. Van Note ranked third out of those twenty-three.

Twenty-two firms submitted proposals in response to the RFP. The Authority reviewed these proposals in depth and ranked them in accordance with the evaluation criteria it had included in the RFP. Following this review, Van Note was ranked sixth, with a total score of 264 points.

Before making its final selection, however, the Authority decided to interview the top twelve ranking firms. After the interviews were concluded, those firms were again scored. Van Note received an interview score of 244 points and dropped in rank from sixth to eighth. Hatch Mott MacDonald, on the other hand, with an interview score of 309, went from seventh place to fifth place while French & Parello Associates, P.A., which had been ninth, jumped to seventh place, with an interview score of 281.

The Authority then decided to name the seven highest ranked firms as eligible to receive site feasibility contracts. Van Note, which would have been eligible at the end of the evaluation of its written submission, was excluded from those eligible for contract selection. It has appealed from that determination.

New Jersey's public procurement procedures are designed "to promote the honesty and integrity of those bidding and of the system itself." *Keyes Martin & Co. v. Dir., Div. of Purchase and Prop.,* 99 *N.J.* 244, 256, 491 *A.*2d 1236 (1985). "Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." *George Harms Constr. Co. v. N.J. Tpk. Auth.,* 137 *N.J.* 8, 36, 644 *A.*2d 76 (1994) (quoting *Terminal Constr. Corp. v. Atl. County Sewerage Auth.,* 67 *N.J.* 403, 410, 341 *A.*2d 327 (1975)).

Appellate review of an agency decision in this area is limited. *Commercial Cleaning Corp. v. Sullivan,* 47 *N.J.* 539, 549, 222 *A.*2d 4 (1966). Broad latitude and discretion is afforded to the agency, and the court "will not interfere in the absence of bad faith, corruption, fraud or gross abuse of discretion." *Ibid.*

■ Van Note contends that the Authority used a two-step process to make its final selection of eligible firms that did not comply with established regulatory requirements. The first step involved the review and evaluation of the twenty-two technical proposals received in response to the RFP. The second step consisted of interviews with those firms ranked twelve and higher after evaluation of the technical proposals. Van Note asserts that the record demonstrates that the Authority's final selection was based entirely upon the interview scores of the twelve finalists. After reviewing the record, we are constrained to agree.

*N.J.S.A.* 52:34–9.5(b) provides that an agency engaging in the procurement process must first adopt regulations outlining the criteria it will use to select qualified firms. The applicable regulation guiding the Authority's award of contracts for professional services in excess of $2 million is *N.J.A.C.* 19:38C–5.6. It requires a review of:

> all technical proposals based upon the evaluation criteria established by [the Authority] staff. Clarifying technical and/or organizational information may be requested from the consultants and, at the sole discretion of the [Authority], interviews may be held prior to the determination of the final ranking. Each member shall evaluate the technical proposals, along with the interviews, if any, and assign a score. The selection coordinator shall compile and tabulate all individual scores and prepare a consolidated ranking of all of the consultants.

The record before us demonstrates that the Authority did not prepare a consolidated ranking and thus did not comply with this regulation. The memorandum of November 28, 2007, details the process used. It sets forth in one table the ranking of the twenty-two firms after evaluation of their technical proposals, and the scores obtained by each firm. As we indicated earlier, Van Note ranked sixth at this stage, with a score of 264. The overall scores ranged from a high of 294, obtained by The Louis Berger Group, Inc., to 115, obtained by Act Engineers, Inc., The three firms ranked immediately below Van Note, that is, seventh, eighth and ninth, were Hatch Mott MacDonald, with a score of 260, Brinkerhoff Environmental Services, Inc., with a score of 238, and French & Parello Associates, P.A., with a score of 234.5. The Authority

selected those seven firms with the top interview scores, thus dropping Van Note entirely.

*N.J.A.C.* 19:38C–5.6 states that "[e]ach member shall evaluate the technical proposals, along with the interviews, if any, and assign a score." Here, in reaching its final decision, the Authority excluded the scores received in the evaluations of the firms' technical proposals. Rather, its ultimate decision was based on the score and rank received following the interviews.

■ "Because administrative regulations that apply to the regulated public have the force and effect of statutory law, an administrative agency ordinarily must enforce and adhere to, and may not disregard, the regulations it has promulgated." *Davis v. Am. Honda Motor Co.*, 368 *N.J.Super.* 333, 337, 845 *A.2d* 1278 (App. Div.2004) (quoting *County of Hudson v. Dep't of Corr.*, 152 *N.J.* 60, 70, 703 *A.2d* 268 (1997)). Because the Authority disregarded this regulation, its decision cannot stand.

■ We turn now to the question of what should the appropriate remedy be in this situation. A number of options present themselves, including remanding this matter to the Authority for further proceedings and prohibiting it from awarding any contracts in the interim, remanding this matter to the Authority for further proceedings but without enjoining the award of any contracts during the remand proceedings, compelling the Authority to award contracts to Van Note, and finally, simply concluding that this contract is so far along that no relief is practicable.

We consider the first option unacceptable in light of its potential effect on school construction in those areas of the State where it is most needed. The greatest impact would be felt by those least able to bear it.

We also reject the second option. There is no practicable way to assure that the remand proceedings would be completed before the end of this contract cycle. To remand this matter while letting contract awards continue would, in our judgment, achieve nothing but an increase in counsel fees.

We also reject the third option. We were informed at oral argument that a firm chosen as a site consultant is not assured that it will be selected to perform site selection work during the contract cycle. Ordering the Authority to award contracts to Van Note would thus grant Van Note more than it might have achieved if it had been declared eligible from the outset. The selection means only that the firm is eligible to be considered to perform site selection work for the SCC, or its successor, the Authority.

We also reject the fourth option of doing nothing. That would provide no measure of relief for Van Note and leave in place a determination we have judged to be fatally flawed.

In this context, we deem the fairest outcome to be a directive to the Authority to expand its list of eligible contractors from seven to eight by including Van Note among those eligible. This will place Van Note in the same position it would have been if the process had complied with *N.J.A.C.* 19:38C–5.6 but will not displace any of the other firms deemed eligible. It will, moreover, not expand the list of eligible contractors beyond the number that the Authority had originally contemplated naming.

We note for the sake of completeness that Van Note filed an amended notice of appeal which appealed the decision of the Authority to deny Van Note's request for a hearing on its exclusion. Under our analysis of the issues, we do not deem it necessary to address the contentions raised in this amended notice.

The Final Decision of the Authority is modified and, as modified, is affirmed.